UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-cv-12475-RGS

MICHELLE KEATING

v.

COMMONWEALTH OF MASSACHUSETTS,
TOWN OF GROVELAND, EDWARD JONES
and THE JONES FINANCIAL COMPANIES

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS THE AMENDED COMPLAINT

May 13, 2024

STEARNS, D.J.

Plaintiff Michelle Keating filed her first version of this Complaint on October 23, 2023, under the Fair Housing Act, 42 U.S.C. ¶¶ 3601 (FHA), et seq. alleging deception on the part of the Commonwealth of Massachusetts, the Town of Groveland, and Edward Jones and The Jones Financial Companies (Jones defendants) in connection with three real estate transactions in Groveland, Massachusetts. Keating further claims that she and her family were "denied due process and equal protection under the laws in Probate and Family Court between 2005 and 2010 as well as her children's special education proceedings at the BSEA and the Superior Court in Essex

County between 2006 and 2013."[1] Compl. ¶ 62. She asks for judgment under the FHA and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution under the Federal Civil Rights Act, 42 ¶ 1983, ¶ 1985 (conspiracy to interfere with civil rights, ¶ 1986 (action for neglect to prevent a denial of civil rights).

As factual support for her claims, Keating asserts that defendants are responsible for "a continuous discriminatory scheme" involving a mortgage that she had taken out on 7 Pinewood Lane in Groveland, and her ultimate eviction from 4 Parker Road, also in Groveland. Compl. ¶ ¶ 1-7. After a kerfuffle over service, defendants filed motions to dismiss pointing to Keating's failure to comply with federal procedural Rules 8, 9(b), 10, and 12(b)(6), various statutes of limitations, and to address their defenses of qualified and absolute immunity.

In response to defendants' motions to dismiss, Keating filed a seventy-two page/167-paragraph Amended Complaint (FAC). While labeling hers as

---

[1] In support of her due process and equal protection claims under 42 U.S.C. § 1983, Keating asserts that defendants Commonwealth of Massachusetts, Town of Groveland, and "Edward Jones and/or JFC" (both private entities, one Keating's prior employer) "is a responsible party as this is a pattern or practice under the color of law." Compl. ¶¶ 64-66. Keating fails to allege the policy or practice that the Town or the Commonwealth implemented and then unconstitutionally violated. Nor does Keating allege facts to support the assertion that the Edward Jones defendant who are private entities, acted under the color of law.

2

a "predatory lending liability case," Keating devotes pages to describing four decades of unrelated events. Among her "facts", she alleges that she was "manipulated and deceived into applying for fictitious employment, fictitious education, and tricked into signing fraudulent mortgages and fraudulent school loans relating to the fictitious employment and education," all in service of a "long running scheme involving municipal securities." FAC ¶ 1 (Dkt #33). In the body of the "parties" section of the FAC, Keating includes a salmagundi of allegations from the original Complaint – her "fictitious" education and real estate associated loans, her divorce proceedings (2005-2010) (even her mother's divorce in 1978), and her litigation against the Bureau of Special Education Appeals (from 2011-2012). Keating's focus in her FAC, however, is allegations concerning her "fictitious" employment at Jones "Financial Companies," and its "creation [of] a fictitious FIRM using Michelle's personal ID information" (2001-2018). FAC ¶¶ 11-107. While not named as defendants, she also references multiple institutions and individuals, including colleges, state agencies and employees, courts, judges, bankers, lawyers, and real estate and mortgage brokers. *See e.g. id.* ¶¶ 7-8, 95-96, 114-117, 139-145.

In her prayer for relief, Keating asks the court to "accept jurisdiction and provide declaratory relief" over a myriad of unrelated, alleged harms.

3

Specifically, she requests back pay from Edward Jones as disgorgement of the profits from "their false advertising scheme;" a declaration that "her education loans [are] null and void;" declaring her mortgage(s) (on 7 Pinewood Lane and 4 Parker Road) "void;" and "granting her the property known as 4 Parker Road."[2]

Having reviewed Keating's FAC (and, although now without import, her original Complaint), the defendants' motions and Keating's oppositions to those motions, the motions to dismiss (Dkt # 37, # 39, and # 41) will be <u>ALLOWED</u> for Keating's failure to comply with the pleading standards and procedural rules described below.  Keating has failed to state any cognizable claims against these defendants or factual basis for her belief that these unrelated entities in some way conspired to discriminate against her and her family by "taking her properties," using her identity, and infiltrating with concerted fraudulent intent all aspects of her life, including her education, divorce, employment, and residential real estate dealings.

---

[2] As best as the court can discern, after their divorce, Keating's spouse was awarded the marital home at 7 Pinewood Lane. FAC ¶ 158.  It appears that Keating lost 4 Parker Road to foreclosure in October of 2021. Pl.'s Opp'n to Town of Groveland's Mot. to Dismiss (Dkt #48).  The court notes that there is nothing in the FAC suggesting that one or any of these defendants were involved in the purchase or foreclosure on 7 Pinewood Lane or possesses any beneficial interest in the property.

## DISCUSSION

"To survive a motion to dismiss, plaintiff's complaint 'must contain sufficient factual matter . . . to state a claim that is plausible on its face.'" *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (second alteration in original). Under this familiar "make-or-break standard," a claim has facial plausibility "when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 29 (1st Cir. 2010). Although the standard is deferential to plaintiffs, "[i]f the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' the complaint is vulnerable to a motion to dismiss." *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017), quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010). In reviewing a motion to dismiss, the court confines itself to the Complaint (here the FAC) – excepting only documents that are central to the court's review and their authenticity cannot be disputed (i.e, public records or documents, like a signed contract which is the basis of the Complaint). *See Hogan v. E. Enters./Bos. Gas,* 165 F. Supp. 2d 55, 58 (D. Mass. 2001). To be clear, this means that the court cannot consider issues Keating has raised in other

pleadings, including her Oppositions or original Complaint, nor can Keating attach noncompliant exhibits to her Complaint.

The basis of Keating's allegations is fraud. To plead common-law fraud requires (1) a false representation of a material fact, (2) made with knowledge of its falsity, (3) for the purpose of inducing a party to act thereon, and (4) that the party relied upon the representation as true and acted upon it to its detriment. *See Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 54 (D. Mass. 2015). Keating claims that the defendants acted in concert. A civil conspiracy occurs when two or more people agree to do something unlawful that harms a third party, and then one of the conspirators commits an overt act to carry out the conspiratorial plan. *See Williams v. City of Boston*, 771 F. Supp. 2d 190, 204 (D. Mass 2011). The plaintiff must also demonstrate a loss suffered as a result of the conspirators' acts.

A municipality may be held liable for monetary damages or injunctive relief only if its unconstitutional policies "cause" a constitutional injury. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993). *See also Los Angeles Cnty., California v. Humphries,* 562 U.S. 8, 36-37 (2011) (emphasizing that Monell's "policy or custom" requirement applies to prayers for declaratory or injunctive relief with the same force as it does to claims for monetary damages); *Ouellette v.*

6

*Beaupre*, 977 F.3d 127, 140 (1st Cir. 2020) ("A plaintiff can bring a § 1983 claim against a municipality only if she sufficiently pleads 'the existence of an official municipal policy or custom condoning the alleged constitutional violation.'"). Here, the FAC fails to concretely allege the existence of any relevant official custom or policy of the Commonwealth of Massachusetts or the Town of Groveland. Moreover, as private entities, there is no viable § 1983 action against the Jones defendants. *Dominic v. Goldman*, 560 F. Supp. 3d 579 (D.N.H. 2021) ("Speculation about what might have occurred and general allegations of conspiracy or joint action with a state actor without supporting allegations of specific underlying facts are insufficient to establish that a private party acted under color of state law for the purpose of a § 1983 claim.").

The FHA prohibits discrimination on the basis of race, color, religion, sex, handicap, familial status, or national origin in the sale or rental of housing, the financing of housing, the provision of brokerage services, or in residential real estate-related transactions. Keating claims that the defendants discriminated against her during her purchase of the properties of 7 Pinewood Lane (in 1997) and 4 Parker Road (in 2006) based on "her gender as a female, family status and/or being regarded to have a disability or because of her children being regarded as having a disability." FAC ¶ 1.

To succeed on her FHA claim, Keating must articulate the basis of the alleged discriminatory animus, and explain how each defendant discriminated against her and caused her harm in the course of her real estate dealings.

Also, Keating fails to allege any facts supporting the elements of a claim under Employment Retirement Income Security Act (ERISA) of 1974, (employee benefits) or a consumer protection action under Massachusetts General Laws chapter 93A.[3]

---

[3] Keating failed to properly serve a demand letter as required under Mass. Gen. Laws ch. 93A, § 9(3), on each of the defendants. Similarly, ERISA plaintiffs must exhaust administrative remedies under their employee benefits plan prior to filing a lawsuit. While Keating asserts in her Opposition that she properly served the Edward Jones defendants, the demand letter required as prerequisite to suit under the Massachusetts Consumer Protection Act must describe the complained-of acts with reasonable specificity. Keating also admits that she may have sent the Chapter 93A letter to an improper address. *See Smith v. Jenkins*, 777 F. Supp. 2d 264, (D. Mass. 2011) ("mailbox rule" did not apply to give rise to presumption that presuit demand letter mailed to wrong postal address was received by its intended recipient); *Smith v. Jenkins*, 732 F.3d 51, 74 (1st Cir. 2013) (mailing pre-suit demand letter to two employees of real estate brokerage firm, who were no longer employed by firm at the time, was insufficient for compliance with pre-suit demand letter requirement set out in the Massachusetts unfair or deceptive practices act, even though letters were mailed to firm's office.).

**Rule 8(a)(2)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must also comply with Rule 8(a)(2) of the federal rules, which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." S*ee Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), citing Fed. R. Civ. P. 8(a)(2).  The "fundamental purpose" of this pleading rule "is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Martinez v. Petrenko*, 792 F.3d 173, 179 (1st Cir. 2015) (quoting *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008)).

The requirement of a "short and plain" statement of a claim "proscribes the obfuscation of the plaintiff's claims." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021).  "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Miranda v. United States*, 105 Fed. App'x 280, 281 (1st Cir. 2004) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 522 (2d ed. 1990)).  Similarly, "where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the

9

alleged wrongful conduct, dismissal is an appropriate remedy." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011).

### Rule 9(b)

Federal Rule of Civil Procedure 9(b) creates a heightened pleading standard for fraud claims and requires that "a party must state with particularity the circumstances constituting fraud . . . ."[4] Because Keating's claims in her FAC assert concerted acts of fraud and fraudulent concealment, she is required to plead such actions with "particularity;" informing the reader of who did what and when it was done. Keating fails to specify the content of the false statements (or the fraudulently concealed information), identify who made the false statements (or concealed the information), and when the statements (or concealments) were made.

### Improper Joinder of Parties

Where a plaintiff brings claims against more than one defendant in a single lawsuit, the claims must be limited to those that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and must involve a "question of law or fact common to all defendants [that] will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). *See also* 7 Charles Alan

---

[4] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

10

Wright et al., *Federal Practice and Procedure* § 1655 (3d ed.). Keating's factual allegations regarding these unrelated defendants describe independent actions occurring at times and places that have no connection with one another. Keating's FAC is clearly at odds with this Rule. [5]

### Statute of Limitations

The general rule is that a tort claim accrues at the time of the plaintiff's injury. *See United States v. Kubrick*, 444 U.S. 111, 113 (1979). A plaintiff does not have to possess actual knowledge of every element of a claim for it to accrue; instead, it accrues as soon as a plaintiff has "knowledge of the facts sufficient to put [her] on inquiry notice" of a possible claim. *Marrapese v. Rhode Island*, 749 F.2d 934, 936-937 (1st Cir. 1984). A plaintiff thus has "a duty to exercise reasonable diligence to investigate and protect [her] rights" within the limitations period. *Id.* at 938.

While the majority of the FAC focuses on Keating's employment with the Edward Jones defendants (between 2001 and 2018), the remaining factual allegations, other than those involving the foreclosure, occurred prior

---

[5] Keating admits in her current pleadings that she lacks factual information to know which defendant played what role in the alleged conspiracy or which defendant is responsible for her alleged harm. Dkt #48 at 2 ("Plaintiff believes based on the evidence that either the Town of Groveland, the Commonwealth of Massachusetts, the Jones Financial Companies, LLP or their agencies or assigns actually owned the properties.").

11

to 2018. Notwithstanding the nebulous nature of her legal claims and stream of consciousness pleading of facts, in their motions to dismiss, defendants strive to label Keating's separate claims and tether them to the associated statute of limitations. The Commonwealth also has produced a chart that sets out Keating's references to even general legal concepts and laws in her FAC and attempts to connect the corresponding statute of limitations (ranging from one to six years) to the references.[6] The government defendants point out that even the lengthiest statute of limitations bars all of Keating's claims based on allegations occurring before October 23, 2017. *See* Commonwealth's Mem. at 8-9 (Dkt. # 38); Groveland's Mem. at 6-9 (Dkt # 40).

Keating asserts in response that the discovery rule applies to her claims "because defendants were responsible for intentionally concealing the material information that would have allowed [her] to avoid being harmed." Dkt #47 at 13; Dkt # 48 at 2 (arguing that "the statute of limitations should be tolled due to fraudulent concealment and fraud which prevented [her]

---

[6] The Commonwealth's generous reading includes 42 U.S.C. §§ 3601 et seq., and any conceivable violations of Keating's constitutional rights presuming viability under 42 U.S.C. § 1983, FAC ¶ 2; 42 U.S.C. §§ 1985, 1986; Mass. Gen. Laws ch. 93A; 29 U.S.C. § 794, "ERISA," the "federal securities laws;" and 20 U.S.C. § 1400, et seq. *See* FAC ¶¶ 3, 10.

from reasonably discovering the harm until after she had been evicted from 4 Parker Road on October 21, 2021"). Keating claims that "she had no reason to have been alerted to the fraudulent scheme until after she realized that she was harmed. . . . [That] it took [her] years to review hundreds of documents either in her possession or available publicly and then research the law to understand the harm."[7] Dkt #48 at 2.

Under the discovery rule, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, a factual basis for a cause of action. The First Circuit Court of Appeals instructs a trial court that

> [w]hen the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a [ ] court should grant a 12(b)(6) motion by the defense if the complaint (and any other properly considered documents) fails to sketch a factual predicate that would provide a basis for tolling the statute of limitations.

---

[7] Keating appears to claim that while she and her husband purchased 7 Pinewood Lane through real estate agents representing the sellers (Bruce and Beverly Dunn), used borrowed money obtained through a conventional lender, and closed on the property with attorneys that they had hired, because of an impenetrably opaque scheme contrived by the defendants, they nonetheless never held ownership of the property. Rather the property was secretly owned by shell companies created by the defendants using Keating's personal identification information. Keating pleads no factual support of this fanciful scheme.

*Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119 (1st Cir. 2014) (internal quotations omitted). The statute of limitations may, on the other hand, be tolled when (1) the facts giving rise to a cause of action are "inherently unknowable" to the injured party, or (2) when a cause of action is fraudulently concealed by the wrongdoer. *Gonzalez v. United States*, 284 F.3d 281, 288-289 (1st Cir. 2002). The burden rests with the plaintiff to demonstrate that her claim is not time barred. *Ouelette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020) ("Once [a] defendant establishe[s a] defense of statute of limitations the burden shifts to plaintiff to establish that the statute of limitations does not apply."); *Zamboni v. Aladan Corp,* 304 F. Supp. 2d 218, 223 (D. Mass. 2004) ("Under Massachusetts law, when a defendant raises the statute of limitations, the burden rests on the plaintiff to demonstrate that [her] claim is not time barred; the plaintiffs must establish the facts that take their case outside the impact of the statute of limitations.").[8] However, documents held within Keating's possession (unopened letters, closing documents, etc.) or part of the public record

---

[8] Without any factual allegations tying the foreclosure to any of the named defendants, Keating states that her eviction from 4 Parker Road in Groveland on October 21, 2021, "was the final act of [a] long running fraudulent scheme that was motivated by discriminatory animus." Dkt #47 at 2; Dkt #48 at 2.

(deeds) are neither "inherently unknowable" or "fraudulently concealed."[9] *See* Dkt #47 at 14.

**Pro Se Status**

While the court is mandated to review pro se pleadings indulgently, a litigant's pro se status does not excuse her failure to comply with the Federal Rules of Civil Procedure or the district court's Local Rules. *See FDIC v. Anchor Props.*, 13 F.3d 27, 31 (1st Cir. 1994). Under Rule 8(a)(2), the plaintiff has a "'responsibility for identifying the nature of her claim'." *Thomas v. Rhode Island*, 542 F.3d 944, 949 (1st Cir. 2008) (quoting *Calvi v. Knox Cnty.*, 470 F.3d 422, 430 (1st Cir. 2006)). The "right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.'" *Andrews v. Bechtel Power Corp.*, 780 F.2d

---

[9] Keating states that, in August of 1997, a deed for the property at 7 Pinewood Lane, Groveland MA "was mailed to [her] residence through the U.S. Mail." FAC at 63 ¶ 2) (This deed should have put Keating on notice of any discrepancies in the underlying real estate transaction). Keating also states that she received insurance documents from AAA Insurance Agency in 1997, that also would have given her notice of any alleged discrepancies with her mortgage. See FAC ¶ 138. Keating admits that "her investigation" into her claims of mortgage fraud began in 2017 when she found "an unopened letter dated 2007" (apparently relating to her mortgage that identified Edward Jones as the mortgagee). She "began reviewing HUD forms and "lending notices" and found "never disclosed" forms of an unspecified nature at the Registry of Deeds (although Keating admits to receiving some real estate documents).

124, 140 (1st Cir. 1985) (quoting *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975)).

In her Opposition memoranda, Keating acknowledges that her Amended Complaint fails to comply with Federal Rules 8, 9, 10, and 12, and that she fails to do more than object to the Commonwealth's interposition of its claim of sovereign immunity. Dkt #46 at 2-5. She also admits that she has little to no idea of what role each defendant played in the alleged "conspiracy." Rather she simply states that "[t]he Town of Groveland . . . is a necessary party until it can be established whether they were acting under the color of state law." Dkt #48 at 12). Keating blames her pro se status and "duration of the facts and circumstances involved" for her non-rules compliant complaint and incoherent pleading while repeatedly requesting an opportunity to further amend her current First Amended Complaint.

Because of Keating's repeated requests to amend under Rule 15, the court will treat her Opposition to the motions as a request to file a Second Amended Complaint. As part of a motion to further amend, Keating must submit a proposed Second Amended Complaint for the court to evaluate and determine whether she has successfully pled a coherent claim (or claims) (1) in numbered paragraphs of clearly-stated facts with a separate section for each specified and adequately articulated cause of action against a particular

defendant or defendants, (2) that arise from the same transaction or occurrence (or series of), and (3) present common questions of law or fact. Fed. R. Civ. P. 20(a)(2)(A)-(B); *see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 96 (1st Cir. 2022). The court warns Keating that a Second Amended Complaint's allegations must also be confined within the applicable statutes of limitations and conform to the rules of pleading discussed above. Similarly, generalized allegations of "fraudulent concealment, material omissions and false statements" will not be accepted as adequate.

## ORDER

For the foregoing reasons, defendants' motion to dismiss the FAC is ALLOWED. Notwithstanding, because of her repeated requests, the court will permit Keating to file a Second Amended Complaint that complies with the above-cited and explained rule and law no later than June 7, 2024. The court will STAY the case until it has an opportunity to evaluate Keating's proposed Second Amended Complaint. The court requires no further filings from defendants. (However, while not required, defendants may move to file a Reply after reviewing Keating's proposed Second Amended Complaint).

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE